**CEMENTOS GUADALAJARA, S.A., Cementos Portland Nacional, S.A., and Cementos Veracruz, S.A., Plaintiffs,**

**Cementos Anahuac Del Golfo, S.A., Plaintiff–Intervenor,**

**v.**

**UNITED STATES, Defendant.**

Court No. 86–12–01525.

United States Court of International Trade.

April 27, 1988.

Ross & Hardies, (Joseph S. Kaplan, Chicago, Ill., on the motion); and O'Connor & Hannan, (David P. Darnell, Washington, D.C., of counsel on the motion) for plaintiffs.

Rogers & Wells (Eugene T. Rossides and Robert E. Ruggeri, Washington, D.C., on the motion) for plaintiff-intervenor.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., (Velta A. Melnbrencis, Asst. Director, New York City, on the motion); and Douglas A. Riggs, Gen. Counsel, M. Jean Anderson, Chief Counsel for International Trade Office of the Deputy Chief Counsel for Import Admin., U.S. Dept. of Commerce (Craig L. Jackson, Washington, D.C., of counsel on the motion) for defendant.

Stewart and Stewart, (Eugene L. Stewart, Terence P. Stewart, D. Scott Nance, and William A. Fennell, Washington, D.C., on the amici brief); Cabot Corp., (William L. May, Jr., Boston, Mass., of counsel on the brief); and PPG Industries, Inc. (Glenn Miller, Pittsburgh, Pa., of counsel on the brief) supporting defendant as amici curiae.

## MEMORANDUM OPINION AND ORDER

CARMAN, Judge:

Plaintiffs Cementos Guadalajara, S.A., Cementos Portland Nacional, S.A., and Cementos Veracruz (plaintiffs) commence this action pursuant to section 516A of the Tariff Act of 1930 (the Act) as amended 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c) (1986). The plaintiffs contest the Department of Commerce, International Trade Administration's (ITA) administrative review of its countervailing duty investigation pursuant to section 751 of the Act, as amended, 19 U.S.C. § 1675 (1986), (751 review), of cement and cement clinker from Mexico. *Portland Hydraulic Cement and Cement Clinker From Mexico; Final Results of Countervailing Duty Administrative Review,* 51 Fed.Reg. 44500 (1986). The review under appeal covered entries made from January 1, 1984 through December 31, 1984 and was the second administrative 751 review of the countervailing duty order.[1]

Plaintiffs brought the action to challenge the authority of the ITA to conduct a 751 review of the countervailing duty order (CVD order) on portland hydraulic cement and cement clinker (PHC) and to issue the results thereof. Plaintiffs' action also contests the authority of the ITA to conduct future 751 reviews based upon the order and to continue to direct the U.S. Customs Service (Customs) to collect estimated duty deposits on future entries. Plaintiffs' challenges rest on the issue whether or not the accession of Mexico to the GATT agreement should have effect on entries of the subject merchandise imported from Mexico into the U.S. at a date prior to Mexico's accession. Plaintiffs believe there is an effect, and its result should end in applying

---

1. Plaintiff-intervenor Cementos Anahuac del Golfo has filed a separate action with this Court, *Cementos Anahuac del Golfo, S.A. v. United States,* Court No. 86–01–00082, challenging the first 751 review of the original order.

an injury determination requirement retroactively to goods entered before the accession date. Cementos Anahuac del Golfo, S.A. (plaintiff-intervenor), supports these assertions.

Plaintiffs now move for summary judgment, pursuant to Rule 56 of the rules of this Court, requesting the Court to: (1) direct the ITA to revoke the order; (2) direct the ITA to order Customs to refund all estimated duty deposits paid upon entries of the subject merchandise; and (3) direct Customs to stop collecting the estimated countervailing duty deposits on the entries of PHC.

Defendant Government urges the Court to deny plaintiffs' motion, enter judgment in favor of the defendant, and sustain the final results of the second 751 review of the CVD order on cement and cement clinker from Mexico. Amici curiae support defendant's position. Upon review of the material facts as to which there is no genuine issue, the Court denies plaintiffs' motion and enters judgment for defendant.

### FACTS

The following facts appear not to be in dispute. On March 8, 1983, the United States Department of Commerce (Commerce) received a petition filed on behalf of the United States producers of PHC. The petition alleged manufacturers, producers, or exporters of PHC in Mexico received, directly or indirectly, bounties or grants within the meaning of section 303 of the Act, as amended, 19 U.S.C. § 1303. On the basis of the petition, the ITA initiated a countervailing duty investigation, on March 28, 1983, to determine if Mexican PHC manufacturers, producers, or exporters received benefits that constituted bounties or grants. *Initiation of Countervailing Duty Investigation; Portland Hydraulic Cement and Cement Clinker From Mexico,* 48 Fed.Reg. 14019 (1983).

At the time of the investigation Mexico was not a "country under the Agreement" within the meaning of section 701(b) of the Act, as amended, 19 U.S.C. § 1671 (1982), and therefore the ITA applied section 303 of the Act, as amended, 19 U.S.C. § 1303.

Section 1303(a)(2) provides for the imposition of duties on nondutiable goods from a country which has no international obligation with the United States requiring an injury determination, by the U.S. International Trade Commission (ITC), for the merchandise. Therefore, under § 1303, the domestic industry was not required to allege, and the ITC was not required to determine, whether or not the importation of the Mexican merchandise caused or threatened to cause material injury to a United States industry.

The ITA determined the investigation was "extraordinarily complicated" and published, on May 19, 1983, its statement, pursuant to section 703(c)(1)(B)(i), of the Act, as amended, 19 U.S.C. § 1671b(c)(1)(B)(i) (1982), declaring the case extraordinarily complicated and requiring additional time necessary to make a preliminary determination. *Portland Hydraulic Cement and Cement Clinker From Mexico; Postponement of Preliminary Countervailing Duty Determination,* 48 Fed.Reg. 22606 (1983).

On July 1, 1983 the ITA completed and issued its preliminary determination that benefits constituting bounties or grants were being provided to Mexican cement businesses. *Preliminary Affirmative Countervailing Duty Determination; Portland Hydraulic Cement and Cement Clinker From Mexico,* 48 Fed.Reg. 31437 (1983). The scope of the investigation covered PHC merchandise which was currently imported under items 511.1420 and 511.-1440 of the *Tariff Schedules of the United States Annotated* (TSUSA). The ITA preliminarily determined the estimated net subsidy provided by Mexico to the Mexican cement producers to be 5.69 percent *ad valorem. Id.* The ITA then directed Customs to "suspend liquidation of all entries of the products subject to this determination which are entered, or withdrawn from warehouse, for consumption, or to require a cash deposit or bond on these products in the amount equal to the estimated net subsidy." *Id.* at 31437.

The only known producers and exporters of the subject merchandise in Mexico, ex-

ported to the United States, were the following businesses: Cementos Guadalajara, S.A., (plaintiff), Cementos Anahuac del Golfo, S.A., (plaintiff-intervenor), Cementos de Chihuahua, S.A., Cementos Mexicanos, S.A., and Cooperativa Cementos Hidalgo, S.C.L. *Final Affirmative Countervailing Duty Determination and Countervailing Duty Order; Portland Hydraulic Cement and Cement Clinker From Mexico,* 48 Fed.Reg. 43063 (1983).

On September 21, 1983, the ITA published its final results of the investigation on the cement merchandise from Mexico. *Id.* Based upon its investigation, the ITA determined certain benefits constituting bounties or grants, pursuant to 19 U.S.C. § 1303, were being provided to the Mexican producers and exporters of the subject merchandise. The period of time used by the ITA, for measurement of the bounties or grants under investigation, was January 1 to December 31, 1982. *Id.* at 43064. The ITA continued to hold, in effect, the suspension of the liquidation ordered in the preliminary determination until further notice. *Id.* at 43070. The net bounties or grants for duty deposit purposes was established for each firm as follows: (1) Cementos Guadalajara, S.A., 5.13%; (2) Cementos Anahuac del Golfo, S.A., 1.64%; (3) Cementos de Chihuahua, S.A., 17.12%; (4) Cementos Mexicanos, S.A., 6.78%; (5) Cooperative Cementos Hidalgo, S.C.L., 0% and; (6) all other manufacturers, producers, or exporters, 6.05%. *Id.*

The ITA also continued to direct Customs to require cash deposits "in the amounts indicated above for each entry of the subject merchandise entered or withdrawn from warehouse, for consumption, on or after the date of the publication of the notice in the Federal Register, and to assess countervailing duties in accordance with sections 706(a)(1) [19 U.S.C. § 1671e(a)(1)] and 751 [19 U.S.C. § 1675] of the Act. *Id.* The ITA also stated its intention "to conduct an administrative review within 12 months of the publication of this determination...." *Id.*

It should be noted the ITA, in its final affirmative determination, repeated essentially the same statement made in its preliminary determination concerning Mexico's GATT status. This statement was published as follows:

Mexico is not a "country under the Agreement" within the meaning of section 701(b) of the Act and, therefore, section 303 of the Act applies to this investigation. The merchandise being investigated is nondutiable, but there are no "international obligations" within the meaning of section 303(a)(2) of the Act which require an injury determination for nondutiable merchandise from Mexico. Therefore, under this section the domestic industry is not required to allege that, and the U.S. International Trade Commission is not required to determine whether, imports of this product cause or threaten material injury to a U.S. industry.

48 Fed.Reg. at 43064.

On April 30, 1985, the Office of the United States Trade Representative published notice that:

The Government of the United Mexican States has assumed obligations with respect to the United States which are substantially equivalent to obligations under the Agreement on the Interpretation and Application of Articles VI, XVI and XXIII of the General Agreement on Tariffs and Trade.

In accordance with section 701(b) of the Tariff Act of 1930, as amended (19 U.S.C. 1671(b)), as of April 23, 1985, Mexico is a "country under the Agreement."

*Determination Regarding the Application of Certain International Agreements,* 50 Fed.Reg. 18335, 18335–36 (1985). This notice was published in response to the action of the United States entering into a "substantially equivalent agreement" with Mexico entitled "Understanding between the United States and Mexico Regarding Subsidies and Countervailing Duties" (the Understanding). This bilateral agreement, signed on April 23, 1985, required, *inter alia,* the United States to find injury or threat of injury to a United States industry before imposing countervailing duties upon any product of

Mexico. The agreement set forth, in pertinent part, as follows:

> With respect to all United States countervailing duty investigations in progress concerning products of Mexico as of the date of entry into force of this Understanding, the United States shall ensure that no countervailing duties shall be imposed upon any product of Mexico unless it is determined that the subsidized imports are, through the effects of the subsidy, causing or threatening to cause material injury to an established domestic industry, or retard materially the establishment of a domestic industry.

*Understanding Between the United States and Mexico Regarding Subsidies and Countervailing Duties*, (April 23, 1985) United States—Mexico, at paragraph 5.

On July 3, 1985, Commerce published the preliminary results of its first administrative 751 review of the outstanding CVD order on the subject cement items from Mexico. *Portland Hydraulic Cement and Cement Clinker From Mexico; Preliminary Results of Administrative Review of Countervailing Duty Order*, 50 Fed.Reg. 27476 (1985). The review covered the time period July 1, 1983 to December 31, 1983. The preliminary determination revealed the total bounty or grant extended to four firms, including one plaintiff, Cementos Guadalajara, and plaintiff-intervenor, Cementos Anahuac del Golfo, was found to be *de minimis* and the total bounty or grant extended to the remaining firms, including plaintiffs Cementos Portland Nacional and

Cementos Veracruz, was found to be 3.49 percent *ad valorem. Id.* at 27479.[2]

On November 27, 1985, the ITA published notice it had received timely requests to conduct, among other things, a second 751 review of the CVD order on PHC from Mexico covering the period of January, 1984 to December, 1984. The ITA, pursuant to 19 C.F.R. §§ 353.53a(c) and 355.-10(C), declared it would initiate this review. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 50 Fed.Reg. 48825 (1985).

The ITA published its final results on December 19, 1985 of its first 751 review of the CVD order, covering entries made from July 1, 1983 through December 31, 1983. *Portland Hydraulic Cement and Cement Clinker From Mexico; Final Results of Administrative Review of Countervailing Duty Order*, 50 Fed.Reg. 51732 (1985). The results of the first 751 review led the ITA to determine:

> the total bounty or grant during the period of review to be zero for Cementos Guadalajara, Cementos Mexicanos, Cementos Anahuac, and 0.40 percent *ad valorem* for Cementos Hidalgo and 0.499 percent *ad valorem* for Cementos Veracruz. The Department considers any rate less than 0.50 percent to be *de minimis*. For all other firms, we determine the bounty or grant during the review period to be 3.50 percent *ad valorem*.

50 Fed.Reg. at 51737.[3]

The ITA gave interested parties opportunity to comment on the preliminary results

---

**2.** In the notice, the ITA further stated:

> The Department intends to instruct the Customs Service to assess no countervailing duties on shipments of this merchandise from the four firms with a zero or *de minimis* rate of benefit, and countervailing duties of 3.49 percent of f.o.b. invoice price on shipments from all other firms entered, or withdrawn from warehouses, for consumption on or after July 8, 1983, the date of the Department's affirmative preliminary determination, and exported on or before December 31, 1983.
>
> The Department intends to instruct the Customs Service not to collect a cash deposit of estimated countervailing duties, as provided by section 751(a)(1) of the Tariff Act, on shipments from the four firms and to collect 3.15 percent of the entered value on shipments

> from all other firms entered, or withdrawn from warehouse, for consumption on or after the date of publication of the final results of this administrative review. These deposit requirements shall remain in effect until publication of the final results of the next administrative review.

50 Fed.Reg. at 27479.

**3.** The ITA continued to inform and direct Customs as to procedure on the shipments. The published notice provided:

> We will instruct the Customs Service to assess no countervailing duties on shipments of this merchandise from the five firms with zero or *de minimis* rates of subsidy, and countervailing duties of 3.50 percent of the f.o.b. invoice price on shipments from all other

of the first 751 review before publishing the notice of the final results. One of the interested party firms, not a party to the present action (Cementos de Chihuahua), contended in its comments the ITA should revoke the order pursuant to the provisions of section 303 of the Act, as amended, 19 U.S.C. § 1303. Section 1303 prohibits the ITA "from assessing countervailing duties on duty-free products without an affirmative finding of injury if the United States has an international obligation to provide such an injury test." *Id.* at 51736. Cementos de Chihuahua argued the Understanding, between the United States and Mexico granted Mexico most-favored-nation (MFN) status, and therefore it should be found Mexico and the United States had an international obligation that duty-free goods from Mexico would be afforded an injury test before countervailing duties would be assessed. Cementos de Chihuahua maintained the Understanding "requires an injury test in all then pending and subsequent investigations. It does not preclude injury tests for pre-existing countervailing duty orders." *Id.*

The ITA disagreed with these contentions. The ITA responded, in the published final results, there was:

no international obligation within the meaning of section 303 of the Tariff Act to provide an injury test in this case. The Understanding specifically limits injury tests in countervailing duty proceedings to investigations in progress on

firms entered or withdrawn from warehouse, for consumption on or after July 8, 1983, and exported on or before December 31, 1983.
 The Department will instruct the Customs Service not to collect cash deposits of estimated countervailing duties, as provided by section 751(a)(1) of the Tariff Act, on shipments from the five firms with zero or *de minimis* assessment rates during the period of review or from Nacional and to collect cash deposits of estimated countervailing duties of 3.28 percent *ad valorem* for shipments from all other firms entered, or withdrawn from warehouse, for consumption on or after the date of publication of this notice. This deposit requirement and waiver shall remain in effect until publication of the final results of the next administrative review.
 50 Fed.Reg. at 51737.

April 23, 1985 and to proceedings begun on or after that date.

With regard to paragraph 5, we have confirmed with the U.S. negotiators that their intention was to exclude application of this Understanding to pre-existing orders. Inasmuch as the Mexican government has not commented on our preliminary results (in which we proposed to assess duties) nor exercised its rights under the disputes clause of the Understanding (paragraph 11), we have no reason to believe that the Mexican government has a different view.
*Id.* at 51736.

On August 24, 1986, Mexico became a formal contracting party and acceded to the General Agreement on Tariffs and Trade (GATT) [4].

The ITA's preliminary results of the second 751 review of the CVD order were published on September 29, 1986. *Portland Hydraulic Cement and Cement Clinker From Mexico; Preliminary Results of Countervailing Duty Administrative Review,* 51 Fed.Reg. 34483 (1986). The review covered the period January 1, 1984 through December 31, 1984. As a result of its review, the ITA preliminarily determined *de minimis* bounty or grant rates existed for three Mexican firms, including plaintiff-intervenor, and a bounty or grant rate of 3.35 percent *ad valorem* existed for all other firms, including all other plaintiffs. The ITA stated its intention to instruct Customs on the assessment of duty cash deposits.[5]

**4.** General Agreement on Tariffs and Trade (GATT), 30 October 1947, 61 Stat., T.I.A.S. No. 1700, 55 U.N.T.S. 184 (1947).

**5.** The notice set forth:
 The Department intends to instruct the Customs Service not to assess countervailing duties on shipments of Mexican portland hydraulic cement and cement clinker from the three firms with zero or *de minimis* benefits, and to assess countervailing duties of 3.35 percent of the f.o.b. invoice price on shipments from all other firms exported on or after January 1, 1984 and on or before December 31, 1984.
 The increase in the FOMEX interest rates reduces the total estimated bounty or grant to 3.20 percent *ad valorem.* Therefore, the Department intends to instruct the Customs Ser-

On October 22, 1986, plaintiff-intervenor requested the ITA to take action to revoke the outstanding CVD order, contending the order was not in accordance with U.S. international obligations with Mexico under the GATT.

The ITA completed its second 751 review and published the results on December 10, 1986. *Portland Hydraulic Cement and Cement Clinker From Mexico; Final Results of Countervailing Duty Administrative Review*, 51 Fed.Reg. 44500 (1986). In Comment 1 of these results, the ITA commented about its authority to revoke the original CVD order, as was requested by the petitioners. The following is the ITA's published comments on this contention:

*Comment 1:* The five exporters contends [sic] that the Department should revoke this order. Section 303 of the Tariff Act prohibits the Department from assessing countervailing duties on duty-free products without an affirmative finding of injury if the United States has an international obligation to provide such an injury test. In the "Understanding Between the United States and Mexico Regarding Subsidies and Countervailing Duties" ("the Understanding") signed on April 23, 1985, the United States granted Mexico most-favored-nation ("MFN") status. On August 24, 1986, Mexico acceded to the General Agreement on Tariffs and Trade ("GATT"). Both the MFN status and GATT membership constitute international obligations of the United States, as defined in section 303. The Department cannot continue to impose countervailing duties on Mexican exports of duty-free products without an affirmative injury determination, which is required by both Article VI.6.(a) of the GATT and section 303 of the Tariff Act.

*Department's Position:* We believe that we lack the authority to revoke this countervailing duty order on the basis of the Understanding. We confirmed with the principal U.S. negotiators that the intent of Article 5 of the Understanding was to exclude from the application of the Understanding, and hence the application of "country under the Agreement" status, [sic] order existing before April 23, 1985. *See,* final results of countervailing duty administrative review on certain iron-metal construction castings from Mexico (51 FR 9698, March 20, 1986).

We are currently considering whether Mexico's accession to the GATT affects our authority to assess countervailing duties on Mexican duty-free products without an affirmative injury determination from the International Trade Commission. Since Mexico's accession was effective on August 24, 1986, our decision will not affect entries covered by this review, which extends only through December 31, 1984.

51 Fed.Reg. at 44500–1.

In similarity to the preliminary determination, the final published results of the second 751 review set forth that the ITA determined a zero or *de minimis* bounty or grant rate existed on goods exported from Mexico, during the January 1, 1984 through December 31, 1984 time period, for Cementos Maya, Cementos Mexicanos, and plaintiff-intervenor. The ITA also determined a 3.32 percent *ad valorem* rate existed for all other firms, including plaintiffs. The ITA directed Customs to continue to "assess no countervailing duties on shipments of this merchandise from the three firms with zero or *de minimis* rates and to assess countervailing duties of 3.32 percent of the f.o.b. invoice price shipments from all [the] other firms...."

On December 12, 1986, plaintiffs filed this action challenging the final second 751

---

vice not to collect a cash deposit of estimated countervailing duties, as provided by section 751(a)(1) of the Tariff Act, on shipments from Cementos Anahuac, S.A., Cementos Maya, S.A., and Cementos Mexicanos, S.A., and to collect 3.20 percent of the f.o.b. invoice price on shipments from all other firms entered, or withdrawn from warehouse, for consumption on or after the date of publication of the final results of this administrative review. These deposit requirements and waiver shall remain in effect until publication of the final results of the next administrative review.

51 Fed.Reg. at 34486.

review results published on December 10, 1986 and raising their arguments concerning an injury determination and revocation of the original countervailing duty order.

On November 6, 1987, upon consent of all parties, the Court enjoined Customs and the ITA from directing the liquidation of the entries of PHC exported from Mexico during the year 1984, the time period covered by the final second 751 review results as published in the Federal Register on December 10, 1986, 51 Fed.Reg. 44500.

## BACKGROUND

Since much of plaintiffs' claims rest on the application of the U.S. countervailing duty law acting in concert with U.S. international trade agreements, it is instructive to consider the relevant statutes and their historical development in relation to United States trade treaties.

The countervailing duty law of the United States has its statutory roots established in the provisions of the Tariff Act of 1890, which, *inter alia,* provided for domestic sugar refiners' protection from unfair foreign competition. This protection consisted of countervailing duties imposed on refined sugar imported from countries that directly or indirectly paid bounties on refined sugar. Tariff Act of 1890, Ch. 1244, ¶ 237, 26 Stat. 567, 584 (1890).[6]

It was section 5 of the Tariff Act of 1897, though, that applied the countervailing duty law to all imported products.[7] This provision was reenacted over the years by

Congress without substantial change. *See* Tariff Act of 1909, § 6, 36 Stat. 85; Tariff Act of 1913, § IV(E), 38 Stat. 193; Tariff Act of 1922, § 303, 42 Stat. 935; Tariff Act of 1930, § 303, 46 Stat. 687; Trade Act of 1974, § 331(a), 88 Stat. 2049, 19 U.S.C. § 1303.

Running parallel to and interacting with the development of the U.S. countervailing duty law is the General Agreement on Tariffs and Trade, otherwise known as the GATT.[8] The GATT is an international treaty that was entered into, on October 30, 1947, by twenty-three governments, including the United States, involved in tariff negotiations after the close of World War II. The United States, and other countries that acceded to the GATT, apply this agreement under the Protocol of Provisional Application, 55 U.N.T.S. 308 (1947). This protocol stated that certain signing countries, including the United States, would undertake to apply provisionally (on or after January 1, 1948) the following: "(a) Parts I and III of the [GATT], and (b) Part II of that Agreement to the fullest extent not inconsistent with existing legislation." *Id.* Clause (b) has been commonly known as the "grandfather clause" because it allows the United States, as well as other countries, to retain, in force *inter alia,* any pre-existing countervailing duty laws and legislation that were inconsistent with GATT. This is significant to note especially for reference in the discussion below of the Trade Act of 1974, and subsequent trade acts.

**6.** The coverage of these provisions was expanded in 1894 to cover all imported sugar, new and refined. Tariff Act of 1894, ch. 349, ¶ 182½, 28 Stat. 509, 521 (1894).

**7.** Section 5 provides as follows:

That whenever any country, dependency, or colony shall pay or bestow, directly or indirectly, any bounty or grant upon the exportation of any article or merchandise from such country, dependency, or colony, and such article or merchandise is dutiable under the provisions of this Act, then upon the importation of any such article or merchandise into the United States, whether the same shall be imported directly from the country of production or otherwise, and whether such article or merchandise is imported in the same condition as when exported from the country of

production or has been changed in condition by remanufacture or otherwise, there shall be levied and paid, in all such cases, in addition to the duties otherwise imposed by this Act, an additional duty equal to the net amount of such bounty or grant, however the same be paid or bestowed. The net amount of all such bounties or grants shall be from time to time ascertained, determined, and declared by the Secretary of the Treasury, who shall make all needful regulations for the identification of such articles and merchandise and for the assessment and collection of such additional duties.

Tariff Act of 1897, ch. 11, § 5, 30 Stat. 151, 205 (1897).

**8.** General Agreement on Tariffs and Trade, 61 Stat. A3, T.I.A.S. No. 1700, 55 U.N.T.S. 182.

Part II of the GATT includes Article VI which deals with the area of antidumping and countervailing duties. Paragraph 6(a) of Article VI provides:

> 6. (a) No contracting party shall levy any antidumping or countervailing duty on the importation of any product of the territory of another contracting party unless it determines that the effect of the dumping or subsidization, as the case may be, is such as to cause or threaten material injury to an established domestic industry, or is such as to retard materially the establishment of a domestic industry.

GATT, 61 Stat. All, T.I.A.S. No. 1700, 55 U.N.T.S. 184 (1947).[9]

At the time of the establishment of the GATT in 1947, the United States countervailing duty law, under § 303 of the Tariff Act of 1930, only applied to dutiable items and did not provide for an injury determination. Therefore, under the "grandfather clause" of the GATT, the United States was under no obligation to apply paragraph 6(a) of the GATT, which was inconsistent with U.S. trade law.

In 1974, Congress passed the Trade Act of 1974, which, *inter alia,* amended § 303 of the trade laws, expanding the countervailing duty law to cover non-dutiable as well as dutiable items.[10] Section 303 originally contained the old law that allowed countervailing duties to be assessed on only dutiable items. The 1974 amendment added, *inter alia,* subsection (a)(2) which provided as follows:

> (2) In the case of any imported article or merchandise which is free of duty, duties may be imposed under this section only if there is an affirmative determination by the Commission under subsection (b)(1) of this section; except that such a determination shall not be required unless a determination of injury is required by the international obligations of the United States.

19 U.S.C. § 1303(a)(2) (1976).

The legislative history explains the reasons behind these amendments:

> 4. *Injury Test—Duty–Free Merchandise.*—The Committee agreed with the provision of the House bill extending the application of the countervailing duty law to duty-free articles. Under this provision, no additional duty could be imposed with respect to any duty-free article unless there is a determination by the International Trade Commission ... that a domestic producer of like or directly competitive articles is being or is likely to be injured, or is prevented from being established by reason of importation of such article.
>
> The inclusion of an injury standard is appropriate in light of the general countervailing duty rule in Article VI of the GATT which requires a finding of injury before such duties may be levied on subsidized product imports. Section 303 of the 1930 Tariff Act does not provide for an injury test. However, because the present U.S. countervailing duty law, which only applies to dutiable items, predates the GATT, it is within the permitted exceptions to the GATT under the so-called "grandfather clause". However, the extension of such law to nondutiable items is not covered by any such exception and so the nondutiable items should be subject to an injury test.

---

**9.** As amended and restated by Part D of the Protocol Amending the Preamble and Parts II and III of GATT. 8 UST 1769 (Oct. 7, 1957).

**10.** The following amendments were made to § 303 of the Tariff Act of 1930:
[For] Subsec[tion] (a), [the Trade Act of 1974] designated existing provisions as par. (1), added pars. (2) to (6), and in par. (1) as so designated, struck out "and such article or merchandise is dutiable under the provisions of this chapter," preceding "then upon the importation of any such article or merchandise" and struck out provisions directing the Secretary of the Treasury to ascertain, determine, or estimate, from time to time, the net amount of bounties or grants, declare the net amount so determined or estimated, and make all regulations he deems necessary for the identification of the articles and merchandise and for the assessment and collection of the additional duties.
[For] subsec[tion] (b) to (e) [, the Trade Act] added subsecs. (b) to (e).

The Trade Act of 1974, § 331(a), 19 U.S.C. § 1303, note on amendments (1976).

S.Rep. No. 1298, 93 Cong., 2d Sess. 185, *reprinted in* 1974 U.S.Code Cong. & Admin.News 7186, 7320.

Therefore, following the enactment of the Trade Act of 1974, injury determinations by the International Trade Commission (ITC) were required as condition precedent to imposing countervailing duties on subsidized nondutiable goods only if required by international obligations (*i.e.*, the GATT). An injury test was still not required for dutiable goods.

In 1979, Congress enacted the Trade Agreements Act of 1979, Pub.L. 96–39, 93 Stat. 144, which added a new title to the Tariff Act of 1930, Title VII: Countervailing and Antidumping Duties, 19 U.S.C. §§ 1671 through 1677g. The Trade Agreements Act was the implementing legislation for the Subsidies/Countervailing Measures Agreement (Subsidies Code), signed by GATT members, stemming from the Tokyo Round of trade negotiations of the GATT.[11] Section 101 of the Trade Agreements Act added § 701 to the Tariff Act of 1930, 19 U.S.C. § 1671, which replaced the countervailing duty law under 19 U.S.C. § 1303, as applied to exports from a "country under the Agreement. The term "under the Agreement" refers to the obligations found in the Subsidies Code of the GATT. Section 1671 provides as follows:

### § 1671. Countervailing duties imposed

#### (a) General Rule

If—

(1) the administering authority determines that—

(A) a country under the Agreement, or

(B) a person who is a citizen or national of such a country, or a corporation, association, or other organization organized in such a country,

is providing, directly or indirectly, a subsidy with respect to the manufacture, production, or exportation of a class or kind of merchandise imported into the United States, and

(2) the Commission determines that—

(A) an industry in the United States—

(i) is materially injured, or

(ii) is threatened with material injury, or

(B) the establishment of an industry in the United States is materially retarded,

by reason of imports of that merchandise, then there shall be imposed upon such merchandise a countervailing duty, in addition to any other duty imposed, equal to the amount of the net subsidy.

#### (b) Country under the Agreement

For purposes of this part, the term "country under the Agreement" means a country—

(1) between the United States and which the Agreement on Subsidies and Countervailing Measures applies, as determined under section 2503(b) of this title.

(2) which has assumed obligations with respect to the United States which are substantially equivalent to obligations under the Agreement, as determined by the President, or

(3) with respect to which the President determines that—

(A) there is an agreement in effect between the United States and that country which—

(i) was in force on June 19, 1979, and

(ii) requires unconditional most-favored-nation treatment with respect to articles imported into the United States,

(B) the General Agreement on Tariffs and Trade does not apply between the United States and that country, and

(C) the agreement described in subparagraph (A) does not expressly permit—

(i) actions required or permitted by the General Agreement on Tariffs and Trade, or required by the Congress, or

---

**11.** The Tokyo Round of Multinational Trade Negotiations was conducted from 1973 through to 1979.

(ii) non-discriminatory prohibitions or restrictions on importation which are designed to prevent deceptive or unfair practices.

(c) Cross reference

For provisions of law applicable in the case of merchandise which is the product of a country other than a country under the Agreement, see section 1303 of this title.

19 U.S.C. § 1671 (1982).

The legislative history explains the "new" law and its effect on the "old" countervailing duty law:

*Present law.—*

\*     \*     \*     \*     \*     \*

Section 303 generally does not require that imports benefiting from a bounty or grant injure a domestic industry before a countervailing duty is imposed. However, if the international obligations of the United States require that duty-free articles from a particular country injure a domestic industry before a countervailing duty may be imposed, then section 303(a)(2) requires a determination whether a domestic industry is being or is likely to be injured, or is prevented from being established, by reason of the importation of the article or merchandise benefiting from the bounty or grant.

\*     \*     \*     \*     \*     \*

*The bill.—*The bill would leave section 303(a)(1) and (2) of the Tariff Act in effect. Section 303 would apply to all imports other than those to which new section 701 of the Tariff Act of 1930 ... applies ....

Under section 701 of the Tariff Act ..., a countervailing duty would be imposed on a class or kind of merchandise imported into the United States if—

(1) a country to which the United States accords the benefits of the Agreement on Subsidies and Countervailing Measures, or

(2) a person, who is a citizen or national of such a country, or an organization organized in such a country,

is providing, directly or indirectly, a subsidy with respect to the manufacture, production, or exportation of that merchandise. No countervailing duty could be imposed under section 701 unless a domestic industry is materially injured or threatened with material injury, or the establishment of an industry in the United States is materially retarded, by reason of imports of the class or kind of merchandise with respect to which a subsidy is being provided.

\*     \*     \*     \*     \*     \*

*Reason for the provision.—*Section 701 would establish the conditions for imposition of countervailing duties consistent with the agreement. A domestic industry must be materially injured by reason of subsidized imports before a countervailing duty could be imposed.

Section 701 would apply only to the extent (1) required by the agreement, as determined under section 2(b) of the bill, and (2) provided under section 701(b)(2) and (3). In all other cases, section 303 of the Tariff Act of 1930, as amended under section 103 of the bill, would continue to apply. Section 303 would continue to require injury as a condition for imposition of countervailing duties only on duty-free imports and only if the international obligations of the United States so require.

Selective application of section 701 is intended to encourage countries to assume the obligations of the agreement, or substantially equivalent obligations, with respect to the United States. This application is consistent with the agreement and the GATT, including the Protocol of Provisional Application of the General Agreement on Tariffs and Trade.

\*     \*     \*     \*     \*     \*

*Present law.—*Section 303 of the Tariff Act (19 U.S.C. 1303) contains few procedural provisions.... The ITC injury determination is required ... only with respect to duty-free goods and only to the extent required by the international obligations of the United States. The United States is obligated to apply the injury test under section 303 only with respect to duty-free products of countries which have fully acceded to the

General Agreement on Tariffs and Trade.

*The bill.* The amendment ... would exclude from the coverage of section 303 of the Tariff Act articles which are the product of a country under the agreement within the meaning of section 701(b) of the Tariff Act, *i.e.,* articles to which section 701 of the Tariff Act would apply.

\* \* \* \* \* \*

*Reasons for the provision.*—The amendments ... conform section 303 ... to appropriate provisions of title VII of the Tariff Act.... Section 303(a)(1) and (2) of the Tariff Act will continue in effect with respect to articles not subject to section 701 of that act. Section 303 will continue to impose countervailing duties, without an injury determination, on all dutiable and certain duty-free articles with respect to which bounties or grants are being provided. The President's statement of proposed administrative action erroneously asserts that an injury determination will be required before countervailing duties can be imposed on duty-free articles from any country. Duty-free articles from certain countries will be subject to countervailing duties after an injury determination, but only if international obligations of the United States, other than the Agreement on Subsidies and Countervailing Measures, require that determination with respect to products of those countries.

S.Rep. No. 96–249, 96th Cong., 1st Sess. 43–45 and 103, *reprinted in* 1979 U.S.Code Cong. & Admin.News 381, 429–431, 481 (footnote omitted).

Section 1303 was amended by the Trade Agreements Act of 1979 by changing the language in (a)(2) and adding new language in (b). These changes are shown as follows: [12]

(2) In the case of any imported article or merchandise which is free of duty, duties may be imposed under this section only if there are affirmative determinations by the Commission under subtitle IV of this chapter except that such a determination shall not be required unless a determination of injury is required by the international obligations of the United States.

**(b) Regulations prescribed by administering authority; imported articles or merchandise which are not duty free**

The duty imposed under subsection (a) of this section shall be imposed, under regulations prescribed by the administering authority (as defined in section 1677(1) of this title), in accordance with subtitle IV of this chapter (relating to the imposition of countervailing duties) except that, in the case of any imported article or merchandise which is not free of duty—

(1) no determination by the United States International Trade Commission under section 1671b(a), 1671c, or 1671d(b) of this title shall be required,

(2) an investigation may not be suspended under section 1671c(c) of this title,

(3) no determination as to the presence of critical circumstances shall be

---

**12.** The amended changes are explained as follows:

Subsec. (a)(2). Pub.L. 96–39, § 103(c), substituted "are affirmative determinations by the Commission under subtitle IV of this chapter" for "is an affirmative determination by the Commission under subsection (b)(1) of this section".

Subsec. (a)(3) to (6). Pub.L. 96–39, § 103(b)(1), struck out pars. (3) to (6) which related to imported articles or merchandise as to which the Secretary of the Treasury had not determined whether or not any bounty or grant was being paid or bestowed, the determination of the question of bounty or grant, and the Secretary's authority to promulgate necessary regulations for the identification of articles and merchandise subject to duties under this section and for the assessment and collection of those duties.

Subsec. (b). Pub.L. 96–39, § 103(b)(2), substituted provisions relating to the imposition of countervailing duties, the regulations relating to the imposition of those duties, and exceptions in the case of imported articles or merchandise which are not free of duty for provisions relating to the determination of injury with respect to duty-free merchandise and the suspension of liquidation.

Trade Agreements Act § 103, 19 U.S.C. § 1303 note on amendments (1982).

made under section 1671b(e) or 1671d(a)(2) or (b)(4)(A) of this title, and

(4) any reference to determinations by the Commission, or to the suspension of an investigation under section 1671c(c) of this title.

19 U.S.C. § 1303(a)(2) and (b) (1982).

It appears, from the language of the statute and from the legislative history that § 701 of the Tariff Act of 1930 as amended by the Trade Agreements Act of 1979 § 101, 19 U.S.C. § 1671 became the controlling countervailing duty law for countries under the Agreement and § 303, 19 U.S.C. 1303, became applicable as a residual provision covering situations that did not apply under § 701, *i.e.,* situations involving countries not under the Agreement.

The Trade Agreements Act of 1979, in part, amended the U.S. trade laws to include, *inter alia,* an injury test for dutiable goods imported from a country under the GATT or from a country the U.S. recognizes as one that has assumed obligations substantially equivalent to those found in the GATT. Dutiable goods not covered under Title VII of the 1979 Act were still subject to countervailing duties without an injury determination. It appears from the language, therefore, dutiable and nondutiable merchandise subject to bounties or grants from countries or entities not "under the Agreement" and not under certain international obligations with the United States are subject to countervailing duty imposition without an injury determination.

## DISCUSSION

The gravamen of plaintiffs' argument is "that the [ITA] acted contrary to law in imposing countervailing duties on imports of PHC from Mexico in *Portland Hydraulic Cement and Cement Clinker From Mexico; Final Results of Countervailing duty Administrative Review,* 51 Fed.Reg. 44501 ( ... 1986)." Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment at 2, *Cemen-*

*tos Guadalajara, S.A. v. United States,* Court No. 86-12-01525.

■ Plaintiffs' first arm of their argument specifically challenges the ITA's issuance of a CVD order imposing duties on the subject nondutiable imports without an affirmative injury determination by the ITC. Plaintiffs do not dispute Section 303 of the Tariff Act of 1930, 19 U.S.C. § 1303 governs the ITA's determination to impose countervailing duties on the subject merchandise, *see,* Plaintiffs' Memorandum in Support of Motion for Summary Judgment at 10, *Cementos Guadalajara, S.A.,* Court No. 86-12-01525,[13] but contend the ITA has misinterpreted the language of § 1303(a)(2), "international obligations" and has erroneously misapplied the statute by not requiring an injury determination by the ITC for the nondutiable merchandise from Mexico. Plaintiffs urge § 1303(a)(2) "mandate an injury test in all such instances [, as here]" because the "international obligations" so require. *Id.* at 11.

Defendant challenges the Court's jurisdiction to review this first argument, as well as other subordinate arguments, because plaintiffs should have raised this challenge within thirty days after publication of the CVD order, pursuant to 19 U.S.C. § 1516a. Amici curiae supports this position.

Section 1516a(a)(2)(A) states:

(2) **Review of determinations on record**

(A) **In general.**—Within thirty days after—

(i) the date of publication in the Federal Register of—

(I) notice of any determination described in clause (ii), (iii), (iv), or (v) of subparagraph (B), or

(II) an antidumping or countervailing duty order based upon any determination described in clause (i) of subparagraph (B), or

(ii) the date of mailing of a determination described in clause (vi) of subparagraph (B),

---

**13.** It appears the issue of whether 19 U.S.C. § 1303 or 19 U.S.C. § 1671 should apply in situations such as the case at bar is presently under consideration by the Court in *Cementos Anahuac del Golfo, S.A. v. United States,* Court No. 86-12-01607.

an interested party who is a party to the proceeding in connection with which the matter arises may commence an action in the United States Court of International Trade by filing a summons, and within thirty days thereafter a complaint, each with the content and in the form, manner, and style prescribed by the rules of that court, contesting any factual findings or legal conclusions upon which the determination is based.

19 U.S.C. § 1516a(a)(2)(A) (1982).

Defendant contends "[i]n such a civil action, [plaintiffs] may contest any factual finding or legal conclusion upon which the determination is based, and judicial review is limited to determining whether the determination, finding, or conclusion is supported by substantial evidence on the record, or otherwise not in accordance with law." Defendant's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment at 17. Defendant contends plaintiffs should have raised their challenge to the underlying CVD order thirty days after the publication of that determination, rather than waiting over three years and two 751 reviews later; an overly lengthy hiatus that bars plaintiffs from now raising the argument. Defendant concludes the Court has jurisdiction only concerning "the factual findings and legal conclusions which underlie Commerce's determination of the amounts of the countervailing duties which are to be assessed upon entries of PHC from Mexico which are covered by the administrative review for the period January 1, 1984 through December 31, 1984 and which could not have been raised in a civil action instituted in October of 1983." *Id.* at 21.

The Court agrees it does not have jurisdiction to review certain arguments by plaintiffs that fall under section 516A(a)(2)-(A)(i)(II), 19 U.S.C. § 1516a(a)(2)(A)(i)(II), which concern plaintiffs' charging the ITA with failure to request and require an injury determination before issuing its underlying countervailing duty order, pursuant to 19 U.S.C. § 1303(a)(2). If plaintiffs believe the underlying CVD order void because of the lack of an injury determination, they should have raised this contention within thirty days after September 21, 1985, when the ITA published its determination that an injury determination was not necessary. It is proper to challenge the ITA's determination within the statutory timeframe prescribed by Congress and within the statutory timeframe which allows the ITA to determine whether it is necessary to require filing of a petition seeking an injury determination from the ITC if it determines it is proper or upon remand from the Court.

Plaintiffs have waited until the statutory framework precludes the ITC from conducting an injury investigation. *See,* 19 U.S.C. § 1671a(b)(2). They now raise an argument complaining about the lack of such procedure upon grounds they claim have been in existence since 1974, nine years prior to the date of the CVD order. Clearly plaintiffs' own inertia in filing their action and raising these arguments within thirty days after the publication of the CVD order has precluded them from raising this contention now and from this Court having jurisdiction to review the matter. *See Royal Business Machines, Inc. v. United States,* 669 F.2d 692 (CCPA 1982).[14]

■ Plaintiffs' second arm of its "§ 303 injury determination requirement" argument urges, in the alternative, that Mexico's accession to GATT entitles the PHC merchandise to an injury determination in all countervailing duty proceedings. Plaintiffs state:

[s]ince the date of the Agreement in 1985 Mexico assumed "substantially equivalent obligations" to those specified under Article VI of the GATT, and since the date of Mexico's GATT accession in 1986, Mexico has become entitled to all the privileges of GATT membership. This, of course, includes the privilege that its products not be subject to the imposition of countervailing duties where there has

---

**14.** The Court points out, nevertheless, where an original CVD investigation is void, for example, where fraud is involved, a petitioner should be able to raise its challenge, *ab initio,* to the original determination, as part of an action challenging the results of a 751 review.

been no related injury determination by ITC. Section 303(a)(2).[15]

Plaintiffs' Memorandum for Summary Judgment at 33. This, plaintiffs argue, is an alternative "reason why the final results of the annual review do not provide a legal basis for ITA to direct Customs to liquidate past entries or require the deposit of estimated countervailing duties on current entries." *Id.*

Plaintiffs additionally contend:

[a]fter GATT accession or other qualifying action, ITA is without authority to issue any order directing the Customs to *impose* final countervailing duties and liquidate entries absent an affirmative injury requirement. The fact that the entries in question were made prior to GATT accession is not dispositive; the fact the order directing imposition or final liquidation of provisional duties collected on those entries was issued *after* GATT accession is.

The term "imposed", as used in Section 303(a)(2) of the Act and defined by the legislative history, has the same meaning as the term "levy" as used in the GATT and defined in the GATT Subsidies Code. Therefore, any ITA order directing the U.S. Customs Service to assess final countervailing duties and to liquidate entries on otherwise duty-free products from a GATT Contracting Party is, regardless of when the goods were actually entered, contrary to U.S. law, absent an affirmative injury determination.

Plaintiffs' Memorandum in Support of Summary Judgment, at 46–47.

Plaintiffs conclude the only appropriate remedy, in this situation, is revocation of the outstanding CVD order. Plaintiffs' support for this argument comes from an ITA published final countervailing duty 751 review results, *Final Results and Partial Revocation of Certain Fasteners From India*, 47 Fed.Reg. 44129 (1982), and an ITA published preliminary CVD determination, *Carbon Steel Wire Rod from Trinidad and Tobago*, 50 Fed.Reg. 19561 (1985). These cases involved situations where the ITA determined (preliminarily in the Trinidad case) to revoke CVD orders covering products from current GATT member countries, entered before and after the decision by the United States Government to change the status of those products from dutiable to nondutiable status. The CVD order was maintained in effect, however, for those fasteners imported prior to the status change in *Indian Fasteners*, but was revoked for goods entered after the status change.[16]

Defendant opposes these contentions and claims plaintiffs have challenged the final second 751 review results covering the time period of January 1, 1984 through December 31, 1984, a time period existing completely before Mexico's date of accession to the GATT. Defendant continues: "Neither Section 303(a)(2) nor the GATT requires the United States to refrain from imposing countervailing duties on merchandise which was entered at a time when no international obligations of the United States required the merchandise be granted an injury test...." Defendant's Memorandum in Opposition to Summary Judgment at 53–54.

Defendant disputes the notion Congress provided for a retroactive application of the countervailing duty law to the subject merchandise entered prior to Mexico's accession to the GATT. Defendant explains, in this instance, although estimated duties are paid upon entry and the actual duties are collected after the 751 review results assess the amount, the liability for whatever duties are collected is established at the time of entry. It is recognized, defendant continues, duties are suspended until a 751 review assesses the correct amount.

Additionally, defendant argues the two published ITA determinations plaintiffs cite for support are distinguishable in the facts

---

**15.** Plaintiffs have stated earlier the issue of the applicability of the 1985 Understanding to the PHC case is not at issue in plaintiffs' appeal. Therefore, the court will not address this argument. *See* Plaintiffs' Memorandum for Summary Judgment at 10.

**16.** The ITA has yet to issue a final revocation order in its investigation *Carbon Steel Wire From Trinidad.*

from the case at bar. Defendant points out in both of the cited cases, the subject merchandise came from countries already maintaining GATT membership or maintaining status as a "country under the Agreement." Defendant also points out the merchandise was duty-free upon entry. The instant case involves goods from a nation with no existing status as a member nation of GATT or as having no pre-existing rights to a different determination with goods changing status in the middle of a 751 review.

Defendant concludes the actual assessment and liquidation of duties on the subject PHC merchandise is based upon the corresponding 751 review results covering the certain time periods at issue occurring before Mexico's GATT accession and therefore not subject to an injury determination.

Section 303, the applicable statute in this action, provides, in pertinent part

(a) Levy of countervailing duties

(1) Except in the case of ... merchandise ... of a country under the Agreement ... whenever any country ... pay[s] or bestow[s] ... any bounty or grant upon the manufacture ... of any ... merchandise manufactured in such country ... then *upon the importation* of such ... merchandise into the United States ... there shall be *levied and paid* ... in addition to any duties otherwise *imposed,* a duty equal to the ... bounty or grant....

(2) In the case of any imported ... merchandise which is free of duty, duties may be *imposed* under this section only if there are affirmative [injury] determinations by the [ITC] under subtitle IV of this chapter; except that such a determination shall not be required unless a

determination of injury is required by the international obligations of the United States.

19 U.S.C. § 1303(a)(1)–(2) (1982) (emphasis added). Subsection (b) directs that the duties imposed under subsection (a) "be imposed, under regulations prescribed by the administering authority (as defined in section 1677(i) of this title), in accordance with subtitle IV of this chapter ..." and discusses exceptions with respect to dutiable merchandise. § 1303(b) (1982).

Plaintiffs argue the language of § 1303(a)(2), has the clear meaning that the final liquidation and imposition of assessed duties, and not merely the collection of estimated duties, may not occur, until an affirmative injury determination has been issued. Plaintiffs maintain the ITA directing Customs to impose final duties, after Mexico's accession to the GATT, was an action in direct contravention of § 1303(a)(2).

In support of this proposition plaintiffs argue Congress, in the legislative history, made evident its intent to conform § 331(a) (1303(a)) to Article VI of the GATT Agreement setting forth "[n]o contracting party shall *levy* any" CVD order without an injury determination. Plaintiffs contend that Congress intended the word "imposed" in § 303(a)(2) to have the same legal meaning as the term "levy" in GATT Article VI; [17] *i.e.,* the final assessment and imposition of duties. Plaintiffs point out the ITA has also undertaken the same analysis and arrived at the same definition as published in *Certain Fasteners From India; Final Results of Administrative Review and Partial Revocation of Countervailing Duty Order,* 47 Fed.Reg. 44129, 44130 (1986).[18]

---

**17.** It appears the Agreement on Interpretation and Application of Articles VI, XVI, and XXIII of GATT, GATT Subsidies Code article 4, paragraph 2, footnote 14 defines "levy" as the definitive or final legal assessment or collection of duty or tax.

**18.** The ITA published the following language in its determination:

Section 303(a)(2) of the Tariff Act states:

\* \* \* \* \* \*

To understand what Congress intended the word "imposed" to mean, we must look to the

legislative history of Section 331 of the Trade Act of 1974, Senate Report 93–1298, 93rd Cong., 2d Sess. at 185....

\* \* \* \* \* \*

This language makes clear that Congress intended section 331(a) to conform to the Article VI GATT injury requirement. Paragraph 6 of Article VI of the GATT states that:

No contracting party shall *levy* any ... countervailing duty on the importation of any product of the territory of another contracting party unless it determines that the effect of

Plaintiffs arguments appear, on their face, convincing, but in reality misconstrue the clear and logical reading of the statute itself. The Court recognizes:

The starting point for interpreting a statute is the language of the statute itself, which must ordinarily be regarded as conclusive absent a clearly expressed legislative intention to the contrary. *Consumer Product Safety Comm'n v. GTE Sylvania,* 447 U.S. 102, 108 [100 S.Ct. 2051, 2056, 64 L.Ed.2d 766] (1980) ...; *Southeastern Community College v. Davis,* 442 U.S. 397, 405 [99 S.Ct. 2361, 2366, 60 L.Ed.2d 980] (1979) ...; *Gilmore Steel Corp. v. United States,* 11 CIT ——, [672 F.Supp. 1459, 1462] (1987). Going behind a statute's plain language to search for a possibly contrary congressional intent is a step the court must take cautiously, even under the best circumstances. *United States v. Locke,* 471 U.S. 84, 95–96 [105 S.Ct. 1785, 1793, 85 L.Ed.2d 64] (1985).

*Serampore Industries PVT. LTD. v. United States,* —— CIT ——, ——, 675 F.Supp. 1354, 1358 (1987) (some citations omitted).

Section 1303(a)(2) states, in the case of duty free merchandise: "duties may be imposed under this Section...." This refers to all of § 1303. It must be remembered subsection (a) paragraph (2) was added as an amended portion to § 1303 in 1974, providing for an injury test on duty-free merchandise. It did not supersede the rest of § 1303 but became an integral part of the statute to be read in tandem.

In the search for how duties are "imposed under this section", Subsection (a) paragraph (1) states *"then upon the importation* of such ... merchandise into the United States ... there shall be levied and paid...."* The point of reference for the

requirement of an injury determination before imposition of countervailing duties appears to correspond to the time when the goods are entered or imported into the United States, not when duties are finally assessed after a 751 review. Once the mechanics of "imposition of duties" is understood, then the phrase "duties may be imposed under this section only if there are affirmative determinations by the [ITC]" becomes clear. Here, *when* the goods were imported more specifically addresses the application of Mexico's GATT accession to the entitlement to an injury determination under § 1303(a)(2), than does the argument about whether 'impose' refers to duty deposits or 751 review assessments.

Goods entered prior to Mexico's accession to GATT are subject to the corresponding outstanding CVD order and final 751 review assessments covering the time period of their entry because upon importation these goods were subject to countervailing duties as goods from a country not under the Agreement and not privileged to an injury determination as set out in the statute. See § 1303(a)(1). Duties to be assessed are those duties incurred on goods covered by the specific 751 review time periods. *Ambassador Division of Florsheim Shoe v. United States,* 748 F.2d 1560, 1565 (Fed.Cir.1984).

■ That the liability for duties is established at the time of the entry of the goods into the United States has been recognized as an axiom of countervailing duty law. This Court in *Zenith Radio Corp. v. United States,* recognized:

[A] claim by the United States for the appropriate duties arises upon the entry of a shipment of merchandise into the

---

the ... subsidization ... is such as to cause or threaten material injury to an established domestic industry, or is such as to retard materially the establishment of a domestic industry. (emphasis added)

Thus, it is apparent that, in this context, Congress intended "impose" to mean "levy." The GATT does not define "levy"; however, the Agreement on Interpretation and Application of Articles VI, XVI and XXIII if the GATT ("Subsidies Code") defines "levy" to mean "the defini-

tive or final legal assessment or collection of a duty or tax." Accordingly, the injury requirement extends beyond the issuance of the countervailing duty order throughout the life of an order whenever duties are assessed or collected. (We also note that, while not dispositive, the title of section 303 itself is *"Levy* of Countervailing Duties". (emphasis added)

*Certain Fasteners from India; Final Results,* 47 Fed.Reg. at 44130.

customs territory of the United States....

It is true that the amount of the claim for duties may be uncertain until liquidation occurs. Nevertheless, the claim for duties exists and an importer obtains possession of goods which he imports subject to the claim of the United States. *Zenith Radio Corp. v. United States,* 1 CIT 180, 184, 509 F.Supp. 1282, 1286 (1981); *rev'd and rem'd on other grounds, Zenith Radio Corp. v. United States,* 710 F.2d 806 (Fed.Cir.1983); *rev'd and rem'd on other grounds, Zenith Radio Corp. v. United States,* 764 F.2d 1577 (Fed.Cir.1985); *aff'd on other grounds, Zenith Radio Corp. v. United States,* 823 F.2d 518 (Fed.Cir.1987). It appears the focus of the duty law is to impose the duties on the goods *as they enter* the United States, even though the actual amount may not be set or assessed until a later time, even to the extent of after a 751 review.

This implementation of the countervailing duty law is in accord with the ITA's partial revocation determination in *Fasteners from India,* 47 Fed.Reg. 44129 (1982). In this publication of the ITA's final 751 review results, the ITA partially revoked an outstanding CVD order only as it pertained to dutiable goods, from a GATT country, that were entered on or after the date the goods attained duty-free status. The CVD order was maintained in effect on those goods entered prior to the effective date the dutiable goods were recognized as nondutiable.

■ The Court finds the ITA's implementation of § 1303, in the instant case, imposing countervailing duties without an injury determination on the subject merchandise entered prior to Mexico's accession to the GATT, was reasonable, supported by substantial evidence on the record, and lawful. The Court holds Congress has not provided for the application of any countervailing duties on a retrospective basis in this instance and the Court will not presume to grant such provisions in this case.

Plaintiffs conclude, in their summary judgment motion papers, revocation of the outstanding CVD order is the only appropriate remedy and therefore the estimated countervailing duties which have been deposited should be refunded and the corresponding entries liquidated free of duty. Plaintiffs have also asserted, in the alternative, that the ITA be directed to refund all duties collected on the PHC entries at the latest as of Mexico's accession to the GATT.

In accordance with the findings of the Court above, the Court denies the relief sought by plaintiffs. Since the Court has found defendant's determination to impose duties on the PHC reasonable, supported by substantial evidence, and in accordance with law as to the goods entered prior to Mexico's GATT accession, it follows plaintiffs' prayer for refund and liquidation for the PHC entered prior to August 24, 1986, as well as for revocation of the underlying CVD order, should be denied.

■ Plaintiffs' alternative request for refund of duties collected on or after August 24, 1986 and duty-free liquidation of the merchandise subject to those duties is also denied. This denial includes any request for a partial revocation of the CVD order as it might pertain to merchandise entered on or after August 24, 1986. The ITA has addressed this contention about revocation of the CVD order, as follows:

We believe that we lack the authority to revoke this countervailing duty order on the basis of the Understanding.... 

We are currently considering whether Mexico's accession to the GATT affects our authority to assess countervailing duties on Mexican duty-free products without an affirmative injury determination from the [ITC]. Since Mexico's accession was effective on August 24, 1986, our decision will not affect entries covered by this review, which extends only through December 31, 1984.

*Portland Hydraulic Cement and Cement Clinker From Mexico; Final Results of Countervailing Duty Administrative Review,* 51 Fed.Reg. 44500, 44501 (1986).

It appears the decision on the refund or liquidation issues concerning all entries im-

ported on or after August 24, 1986 is still before the ITA. Although the ITA has stated it does not believe it has the authority to revoke or partially revoke the order, it appears the question is still under consideration by the ITA as it pertains to the Mexican merchandise entered after August 24, 1986. Customs is still being directed by the ITA to collect only *estimated* countervailing duty deposits on these goods.

■ More importantly, as defendant has pointed out in its opposition papers, the issue of revocation, duty-free liquidation, and refund of estimated duties on goods entered after August 24, 1986, the date of Mexico's accession, is not properly before this Court. The 751 review results covering those goods entered after August 24, 1986 have not been published and as yet remain to be challenged. The plaintiffs have only deposited estimated countervailing duties on this merchandise. No actual assessed countervailing duties have been imposed on these entries at this time.

Plaintiffs have brought their action pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a, challenging the final results of the 751 review covering PHC entered January 1, 1984 through December 24, 1984. The final results do not address or deal with the subject merchandise entered after December 24, 1984. Plaintiffs' revocation request, as it deals with the order covering PHC entered after December 24, 1984, is untimely. Plaintiffs, pursuant to 19 U.S.C. § 1516a(a)(2)(A) may contest "any factual findings or legal conclusions upon which the determination is based." As set forth above, the issues of revocation, duty free liquidation, and refund of estimated duties may be raised as they pertain to factual findings or legal conclusions in the 751 review determination covering the PHC entered prior to December 25, 1984. Concerning the PHC entered in the later review periods, the ITA has not yet made any determination upon which plaintiffs may properly raise objections. Once the ITA has made a determination in these areas, then may plaintiffs challenge the determination and any results they find unsupported by substantial evidence or otherwise contrary to law.

## CONCLUSION

Based upon the discussion and legal conclusions set forth above, the Court denies plaintiffs' motion and finds judgment in favor of defendant.

This Court's order will be entered accordingly.