**GOVERNMENT OF ISRAEL, and Agricultural Export Company Ltd. of Israel (Agrexco), Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF COMMERCE, INTERNATIONAL TRADE ADMINISTRATION, Defendant,**

and

**Roses, Incorporated, Intervenor–Defendant.**

**Court No. 87–01–00036.**

United States Court of International Trade.

April 11, 1990.

Kaplan Russin & Vecchi, Dennis James, Jr., Kathleen F. Patterson, Washington, D.C., and Bonnie G. Nelson, New York City, for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, A. David Lafer, and Office of the Deputy Chief Counsel for Intern. Trade, U.S. Dept. of Commerce, Washington, D.C., Anne W. White, Chevy Chase, Md., of counsel, for defendant.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr. and Charles A. St. Charles, Washington, D.C., for intervenor-defendant.

## MEMORANDUM

AQUILINO, Judge:

This action, which challenges *Fresh Cut Roses from Israel; Final Results of Countervailing Duty Administrative Review and Determination Not to Revoke Countervailing Duty Order*, 51 Fed.Reg. 44,498 (Dec. 10, 1986), has been reassigned to me for disposition. To this end, the plaintiffs have interposed a motion for judgment upon the record compiled by the International Trade Administration, U.S. Department of Commerce ("ITA"). The motion seeks remand to the agency for revocation of the countervailing-duty order as of September 18, 1985 in the absence of any determination by the U.S. International Trade Commission ("ITC") that an industry in the United States is materially injured or threatened with material injury, or the establishment of an industry is materially

retarded, by reason of imports of the fresh-cut roses.

I

The motion shows that the countervailing-duty order issued on September 4, 1980[1] pursuant to 19 U.S.C. § 1303, and without any determination that the covered merchandise was causing injury. Thereafter, the ITA undertook an administrative review of the order pursuant to 19 U.S.C. § 1675 for the period October 1, 1981 through September 30, 1984.

By the time the final results of that review had been published, as cited above, an Agreement on the Establishment of a Free Trade Area Between the Government of the United States of America and the Government of Israel[2] had come into existence. The latter's accession to the Agreement on Interpretation and Application of Articles VI, XVI and XXIII of the General Agreement on Tariffs and Trade[3] (relating to subsidies and countervailing measures) followed, whereupon the United States announced that Israel had become a "country under the Agreement" within the meaning of 19 U.S.C. § 1671(b).[4]

The Israeli Minister (Agricultural Affairs) then requested that the ITA refer the countervailing-duty proceeding to the ITC for an injury determination. *See* record document ("R.Doc") 1. The ITC responded that it had "no authority to conduct an injury investigation in connection with this outstanding countervailing duty (CVD) order"[5], whereupon the minister formally requested the ITA to revoke the order. *See* R.Doc 8. This request was denied per the following reasoning:

The statutory scheme of the T[rade] A[greements] A[ct] indicates that Congress did not intend automatic revocation of countervailing duty orders issued un-

---

1. *See* 45 Fed.Reg. 58,516.

2. April 22, 1985, ____ U.S.T. ____, T.I.A.S. No. ____, *entered into force* Aug. 19, 1985, *reprinted in* 24 I.L.M. 653 (1985).

3. April 12, 1979, 31 U.S.T. 513, T.I.A.S. No. 9619, 1186 U.N.T.S. 204, *entered into force* January 1, 1980.

4. *See* Determination Regarding the Application of Certain International Agreements, 50 Fed. Reg. 38,731 (Sept. 24, 1985).

5. R.Doc 6.

der section 303 of the Tariff Act. If Congress had intended for such an order to be revoked, it could have explicitly provided for revocation. Instead, Congress granted a "country under the Agreement" the injury test in the limited circumstances specified in sections 102 of the TAA (to investigations in progress at the time a country becomes a "country under the Agreement"), 104(b) of the TAA (to section 303 orders in effect on January 1, 1980, if the request for the injury review were made by December 31, 1982), and section 701 of the Tariff Act (to investigations not yet filed on products from a "country under the Agreement"). Congress did not provide for an injury test in the circumstances of this case, where Israel became a "country under the Agreement" *after* issuance of the order under section 303 of the Tariff Act. To read this failure of Congress to provide for an injury test as a requirement for revocation would produce an absurd result, which we cannot assume Congress intended. If we revoke the order on Israeli roses, we would be according greater rights, *i.e.*, automatic revocation, to later signatories of the Agreement on Interpretation and Application of Articles VI, XVI, and XXIII of the General Agreement on Tariffs and Trade ("the Subsidies Code") (which provides "country under the Agreement" status) than to early signatories. Early signatories received the *right* to an injury review that would result in revocation only if the determination of injury were negative.[6]

## II

At the time this action was commenced, seeking reversal of the foregoing rationale, courts had yet to opine on the important issue raised. However, in *Cementos Guadalajara, S.A. v. United States,* 12 CIT ——, 686 F.Supp. 335 (1988), and again in *Cementos Anahuac del Golfo, S.A. v. United States,* 12 CIT ——, 689 F.Supp. 1191 (1988), the court affirmed the ITA's position, and the U.S. Court of Appeals for the Federal Circuit in turn affirmed the

decisions summarily *sub nom. Cementos Guadalajara, S.A. v. United States,* 879 F.2d 847 (1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1318, 108 L.Ed.2d 494 (March 5, 1990).

In this action, the plaintiffs have made it clear that the relief they seek is prospective the moment Israel became a "country under the Agreement", and not retroactive to the date of the original ITA order. That is, they attempt, understandably, to distinguish the foregoing decisions, but in its opinion in *Cementos Guadalajara,* the Court of International Trade stated that the

> point of reference for the requirement of an injury determination before imposition of countervailing duties appears to correspond to the time when the goods are entered or imported into the United States, not when duties are finally assessed after a 751 review.

12 CIT at ——, 686 F.Supp. at 351. *Accord: Cementos Anahuac del Golfo, S.A. v. United States,* 12 CIT at ——, 689 F.Supp. at 1208. If this is the appropriate point of reference, the action at bar entails an administrative review of entries of fresh-cut roses during the period October 1, 1981 through September 30, 1984, which, of course, predates Israel's change of status in September 1985. Hence, the plaintiffs are not entitled to the relief they seek in the light of the above decisions.

Moreover, those cases indicate that this court lacks jurisdiction now to reach the position the plaintiffs are attempting to press. *E.g., Cementos Guadalajara, S.A. v. United States,* 12 CIT at ——, 686 F.Supp. at 353:

> Plaintiffs have brought their action pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a, challenging the final results of the 751 review covering ... January 1, 1984 through December 24, 1984. The final results do not address or deal with the subject merchandise entered after December 24, 1984. Plaintiffs' revocation request, as it deals with the order covering ... ent[ries] after December 24, 1984, is untimely. Plaintiffs, pursuant to

6. 51 Fed.Reg. at 44,499 (emphasis in original).

19 U.S.C. § 1516a(a)(2)(A) may contest "any factual findings or legal conclusions upon which the determination is based." As set forth above, the issues of revocation, duty free liquidation, and refund of estimated duties may be raised as they pertain to factual findings or legal conclusions in the 751 review determination covering the ... ent[ries] prior to December 25, 1984. Concerning the ... ent[ries] in the later review periods, the ITA has not yet made any determination upon which plaintiffs may properly raise objections. Once the ITA has made a determination in these areas, then may plaintiffs challenge the determination and any results they find unsupported by substantial evidence or otherwise contrary to law.

*See also Cementos Anahuac del Golfo, S.A. v. United States*, 12 CIT at ——, 689 F.Supp. at 1206.

In sum, plaintiffs' present motion for judgment on the agency record cannot be granted by this court, and their action must therefore be dismissed.