CERAMICA REGIOMONTANA, S.A., CERAMICAS Y PISOS INDUSTRIALES DE CULIACAN, S.A., INDUSTRIAS INTERCONTINENTAL, S.A., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 88–05–00394

(Decided May 15, 1992)

*Brownstein, Zeidman and Schomer*, (*Steven P. Kersner* and *Ronald W. Wisla*) for plaintiffs.
*Stuart M. Gerson*, Assistant Attorney General, *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, (*Velta A. Melnbrencis*) for defendant.

## OPINION

### INTRODUCTION

MUSGRAVE, *Judge:* Plaintiffs Ceramica Regiomontana ("Ceramica,") Ceramica Y Pisos Industriales de Culiacan ("Culiacan") and Industrias Intercontinental ("Intercontinental") challenge the final results of an administrative review by the Department of Commerce of an order imposing countervailing duties upon imported ceramic tile from Mexico. *Ceramic Tile from Mexico, Final Results of Countervailing Duty; Administrative Review*, 53 Fed. Reg. 15,090 (April 27, 1988). The review covers shipments imported during the period from July 1, 1984 to December 31, 1985. Plaintiffs' action is brought pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I) (1991). Jurisdiction lies in this Court under 28 U.S.C. § 1581(c) (1991).

Plaintiffs' original complaint was amended by motion to two counts. *Ceramica Regiomontana, S.A., et al. v. United States*, Slip op. No. 90–107 (CIT 1990). Count One asserts that the International Trade Administration ("ITA") cannot impose countervailing duties on merchandise imported from Mexico after April 23, 1985, the date that Mexico became a "Country under the Agreement" within the meaning of 19 U.S.C. § 1671(1991), without a determination by the International Trade Commission that the imports of such merchandise materially injure or threaten to materially injure a United States industry producing a like product. Because no injury determination covering plaintiffs' ceramic tile imports has been made, plaintiffs argue the antidumping duties imposed after April 23, 1985 are unauthorized.

In Count Two, Plaintiffs contend that the ITA improperly excluded companies receiving zero or *de minimis* benefits from its calculation of the country-wide countervailing duty rate under *IPSCO, Inc. v. United States*, 8 Fed. Cir. (T) 80, 899 F.2d 1192 (1990).

The government argues that plaintiffs' claims are barred because plaintiffs did not raise them during the administrative proceedings.

Plaintiffs acknowledge that they did not raise their claims below, but argue that the claims are properly before the Court because the issues are purely legal in nature and arose from judicial decisions issued subsequent to the administrative proceedings, and because exhaustion of administrative remedies would have been futile. *Plaintiff's Reply to Defendant's Opposition to Plaintiffs' 56.1 Motion for Judgment on the Agency Record*, at 2.

## EXHAUSTION OF REMEDIES

As a general rule, plaintiffs are required to exhaust the available administrative remedies before they may raise their claim in a civil action. *Allen v. Regan*, 9 CIT 615, 617 (1985). Exhaustion of remedies is not, however, a jurisdictional prerequisite; unless it is mandated by statute, application of the exhaustion doctrine is within the discretion of the court. *Al Tech Specialty Steel Corp. v. United States*, 11 CIT 372, 376, 661 F. Supp. 1206, 1209 (1987); *Timken Co. v. United States*, 10 CIT 86, 93, 630 F. Supp. 1327, 1334 (1986). In cases such as the one at bar, the court is directed by statute to require exhaustion of remedies "where appropriate." 28 U.S.C. § 2637(d) (1991).

In this Court's opinion granting plaintiffs' motion to amend their complaint, the Court found that exhaustion of administrative remedies was not required of plaintiffs' Count Two. *Ceramica*, Slip Op. 90–107, at 5. Despite the legal nature of plaintiffs' Count One, the Court now finds that it is appropriate to require exhaustion of administrative remedies for Count One.

One exception to the exhaustion doctrine is the situation "in which there have been judicial interpretations of existing law after decision below and pending appeal— interpretations which if applied might have materially altered the result." *Ceramica*, Slip Op. 90–107, at 5, quoting *Hormel v. Helvering*, 312 U.S. 552, 558–559, 61 S.Ct. 719, 722, 85 L. Ed. 1037, 1042 (1941). Because *IPSCO* was decided after plaintiffs filed their original complaint, the exhaustion requirement was held inapplicable to plaintiffs' Count Two. Plaintiffs argue that the exhaustion doctrine does not apply to Count One for similar reasons.

Plaintiffs assert that Count Two arises from *Cementos Anahuac del Golfo, S.A. v. United States*, 12 CIT 401, 687 F. Supp. 1558 (May 12, 1988) ("*Anahuac I*"), which was decided shortly after the final results of the administrative review in this case were published. *Ceramic Tile From Mexico*, 53 Fed. Reg. 15,090 (April 27, 1988). In *Anahuac I*, the plaintiffs challenged the final results of an administrative review of an antidumping finding in which the ITA concluded that countervailing duties could be assessed upon cement imports from Mexico without an injury determination, despite the fact that Mexico had become a "country under the Agreement" under 19 U.S.C. § 1671 before the results were published. *Anahuac I*, 12 CIT at 402, 687 F. Supp. at 1559; *Portland Hydraulic Cement and Cement Clinker From Mexico; Final Re-*

*sults Of Administrative Review Of Countervailing Duty Order,* 50 Fed. Reg. 51,732 at 51,736 (December 19, 1985).

Section 303 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1303 (1991) provides for the levy of countervailing duties on subsidized dutiable merchandise without an injury determination by the International Trade Commission ("ITC"), "[e]xcept in the case of an article or merchandise which is the product of a country under the Agreement (within the meaning of section 1671(b) of this title)." Countervailing duties may not be imposed under 19 U.S.C. § 1671 on merchandise from a country under the Agreement without an injury determination.

Mexico became a country under the Agreement on April 23, 1985 as a result of an "Understanding between the United States and Mexico Regarding Subsidies and Countervailing Duties," (the "Understanding.") *Determination Regarding the Application of Certain International Agreements,* 50 Fed. Reg. 18,335, 18,335–36 (1985). The Understanding stated in part,

> With respect to all United States countervailing duty investigations in progress concerning products of Mexico as of the date of entry into force of this Understanding, the United States shall ensure that no countervailing duties shall be imposed upon any product of Mexico unless it is determined that the subsidized imports are, through the effects of the subsidy, causing or threatening to cause material injury to an established domestic industry, or retard materially the establishment of a domestic industry.

*Understanding Between the United States and Mexico Regarding Subsidies and Countervailing Duties,* (April 23, 1985) at paragraph 5; *quoted in Cementos Guadalajara, S.A. v. United States,* 12 CIT 307, 311, 686 F. Supp. 335, 339 (1988).

In *Anahuac I,* the ITA rejected the argument that the administrative review underway at the time Mexico became a country under the Agreement was an "investigation in progress" within the meaning of the Understanding. The ITA concluded that the Understanding did not apply to preexisting countervailing duty orders, and did not impose an obligation to provide an injury test during the review. *Portland Hydraulic Cement and Cement Clinker From Mexico,* 50 Fed. Reg. at 51,736.

The Court of International Trade reversed the ITA, holding that although the tariff is determined at the time of entry, which predated Mexico becoming a country under the Agreement, the countervailing duty is not. The "determination of the presence of a bounty and of particularized benefit therefrom [and therefore the countervailing duty] post-dates the moment of entry, and that administrative process is governed by the law existent then." *Anahuac I,* 12 CIT at 406, 687 F. Supp. at 1563. Since Mexico became a country under the Agreement during the course of the administrative process, the Court held that an injury determination was required pursuant to 19 U.S.C. § 1671. *Id.*

Two nearly contemporaneous decisions drew the opposite conclusion. *Cementos Guadalajara, S.A. v. United States,* 12 CIT 307, 686 F. Supp.

335 (1988), and *Cementos Anahuac del Golfo, S.A. v. United States*, 12 CIT 525, 689 F. Supp. 1191 (1988) ("*Anahuac II*"). These cases held that "countervailing duty law provides for the imposition of duties on merchandise as it is entered even though the actual amount of duties due may not be finally assessed until a later time, including after possible successive 751 reviews." *Anahuac II*, 12 CIT at 546, 689 F. Supp. at 1208, citing *Cementos Guadalajara*, 12 CIT at 328, 686 F. Supp. at 351–52. Since the goods in both cases had been entered before Mexico became a country under the Agreement, no injury assessment was deemed necessary. *Id*.

In a consolidated appeal of all three cases, the Court of Appeals for the Federal Circuit tersely reversed *Anahuac I* and adopted *Anahuac II* and *Guadalajara*. *Cementos Guadalajara, S.A. v. United States*, 7 Fed. Cir.(T) 113, 879 F.2d 847 (1989). Plaintiffs filed their complaint in this case before *Anahuac I* was reversed.

Unlike *Ipsco*, *Anahuac I* cannot affect the result in this case. Plaintiffs correctly point out that the Court of Appeals' decision in *Guadalajara* leaves unresolved the issue of whether the ITA may impose countervailing duties without an injury determination on dutiable merchandise from Mexico imported *after* Mexico became a country under the Agreement. *Plaintiffs' Reply*, n. 1 at 6.

When determining whether a question is precluded from consideration on appeal, the Court will assess the practical ability of a party to have its arguments considered by the administrative body. *Al Tech*, 11 CIT 377, 661 F. Supp. at 1210. In *Timken*, for example, plaintiffs sought remand for further review in light of *Freeport Minerals Co. v. United States*, 3 Fed. Cir. (T) 114, 776 F.2d 1029 (1985), which was decided after the administrative decision and while *Timken* was pending before this Court. *Timken*, 10 CIT at 91, 630 F. Supp. at 1334. Because the *Freeport* decision postdated the administrative proceedings, the *Timken* Court found that there was no danger that *Timken* had refrained from raising the issue below for tactical reasons. *Id*. The Court concluded that Timken had "arguably been taken by surprise by the *Freeport* decision; remand is called for so that its interests may be protected by the review appropriate under the law." *Timken*, 10 CIT at 93, 630 F. Supp. at 1334.

Unlike *Timken*, the present plaintiffs' case does not stem from an unforeseen change in the law, but rather, "[t]he unambiguous and plain meaning of 19 U.S.C. §§ 1303(a)(1) and 1671(a)." *Memorandum of Points and Authorities in Support of Plaintiffs' 56.1 Motion for Judgment on the Agency Record*, at 32. The unambiguous and plain meaning of the statutes could not have taken plaintiffs by surprise. Nor did the *Cementos* cases affect plaintiffs' practical ability to raise their argument before the ITA.

Plaintiffs argue that in any event, raising Count One before the ITA would have been futile. In cases where exhaustion of administrative remedies would have been futile or a useless formality, the Court of International Trade has made an exception to the exhaustion doctrine. *Al-*

*hambra Foundry Co. v. United States*, 12 CIT 343, 347, 685 F. Supp. 1252, 1256 (1988); *Rhone Poulenc, S.A. v. United States*, 7 CIT 133, 136, 583 F. Supp. 607, 610–611 (1984). In *Rhone Poulenc*, the Court noted that it would have been futile for plaintiffs to argue that the agency should not apply its own regulation, and allowed plaintiffs to bring a claim not raised administratively.

Plaintiffs point out that subsequent ITA determinations have rejected their Count One claim, *e.g. Ceramic Tile From Mexico*, 55 Fed. Reg. 50,744 (1990). They also argue that the determination challenged in *Anahuac I*, is an "identical" ruling. *Portland Hydraulic Cement from Mexico*, 50 Fed. Reg. 51,732 (1985). These rulings, plaintiffs maintain, establish the ITA's position and show that an adverse ruling on the claim is certain to have resulted if they had raised it.

Although subsequent administrative reviews support plaintiffs' contention that raising Count One before the ITA would not have affected the result, plaintiffs do not cite any prior reviews that show that ITA review would have been futile. The only determination cited that predates the administrative review at bar is *Portland Hydraulic Cement from Mexico*, which did not involve entries made after Mexico became a "Country Under the Agreement." It does not show that seeking administrative relief on Count One would have been futile. Hindsight alone does not excuse the failure to pursue administrative remedies.

Plaintiffs have failed to point out any substantial impediments to exhausting the administrative remedies available to them on Count One. The Court finds no miscarriage of justice will result from the application of the exhaustion doctrine. The Court concludes that it is appropriate to require exhaustion of administrative remedies for Count One, and in its discretion, declines to exercise jurisdiction over the contention. Count One is dismissed.

## CALCULATION OF THE COUNTRY-WIDE DUTY

Plaintiffs' second count contends that the ITA calculated country-wide countervailing duty rates in a manner subsequently held inappropriate in *Ipsco, Inc. v. United States*, 8 Fed. Cir. (T) 80, 899 F.2d 1192 (1990).

The administrative review determined that the total bounty or grant during the period from July 1, 1984 through December 31, 1984 was zero or de minimis for forty-two named firms, 24.43 percent ad valorem for Culiacan, and 3.16 percent ad valorem for all other firms, including Ceramica and Intercontinental. For the period from January 1, 1985 to December 31, 1985, the total bounty or grant was determined to be zero or de minimis for forty named firms, 18.98 percent ad valorem for Culiacan and 4.17 percent ad valorem for all other firms, including Ceramica and Intercontinental. *Ceramic Tile From Mexico*, 53 Fed. Reg. at 15,090.

The government refers to the rates for Ceramica, Intercontinental and other firms without specified individual rates as "all other" rates, and describes the method it uses to calculate them as follows. First, the

ITA calculates a country-wide rate based on all companies being reviewed. If the country-wide rate is de minimis, the determination will be negative and no countervailing duty order will issue. If the country-wide rate is above de minimis, the ITA calculates individual company rates and compares them with the country-wide rate to determine if the there are "significant differentials" between them. A zero or de minimis rate is, by definition, a "significant differential" from a non-de minimis country-wide rate. *Defendant's Memorandum*, at 67–68. *See* 19 C.F.R. § 355.20(d) (1990).[1]

If any significant differentials exist, under this method the ITA no longer uses the country-wide rate for duty deposit or assessment purposes. Instead, company-specific rates are assigned to those companies receiving significantly different net subsidies (including zero rate and de minimis companies). The remaining companies form the basis of the "all other rate." The "all other" rate "is different from a country-wide rate because it is not based upon all companies, but, rather, those companies being reviewed whose rates are not significantly different from the country-wide rate." *Defendant's Memorandum*, at 68. In other words, for the group of companies whose individual rates are not significantly different from the country-wide rate, the ITA calculates a new "all other" rate that is different from the country-wide rate.

In *Ipsco*, the ITA established a country-wide countervailing duty for oil country tubular goods imported from Canada. Of eleven known producers and exporters, nine were found to receive zero or de minimis subsidies and were excluded from the countervailing duty determination. One did not respond to the ITA's questionnaire. Based upon Ipsco's verified responses to the questionnaire, Ipsco was found to have a non-de minimis net subsidy. Ipsco's rate was then used as the country-wide countervailing duty rate. *Final Affirmative Countervailing Duty Determination; Oil Country Tubular Goods From Canada*, 51 Fed. Reg. 15,037 (1986); *Ipsco*, 8 Fed. Cir. (T) at 81, 899 F.2d at 1193–94.

Ipsco challenged the determination, arguing that the proper method of calculating the country-wide rate was to average the net subsidy Ipsco received with the firms receiving no subsidies. *Ipsco v. United States*, 12 CIT 359, 360–61, 687 F. Supp. 614, 616 (1988). Ipsco contended that the resulting country-wide rate would be de minimis. *Id.* at 617. The Court of International Trade upheld the ITA's method. *Id.*

The Court of Appeals for the Federal Circuit reversed. *Ipsco*, 8 Fed. Cir. (T) at 86, 899 F.2d at 1197. The Court noted that 19 U.S.C. § 1672e(a)(2) (1988) establishes a presumption in favor of country-wide

---

[1] Although the final determination was completed in 1988, the government's calculations were based at least in part upon policies later codified, with some changes, in regulations that became effective January 26, 1989. *Countervailing Duties*, Final Rule, 53 Fed. Reg. 52,306 (1988). In the administrative review, the ITA indicated that a significant difference between an individual rate and the country-wide rate is "10 percentage points or 25 percent, whichever is greater." *Ceramic Tile From Mexico*, 53 Fed. Reg. 15090, 15,091. According the subsequent regulations, a "significant differential" is "a difference of the greater of at least five percentage points, or 25 percent * * *." *Countervailing Duties*, Final Rule, 53 Fed. Reg. at 52,353 (19 C.F.R. § 353.20(d)(3).) The government relies extensively on the notice and comments from *Countervailing Duties*, Final Rule, in its memorandum.

countervailing duty rates, and held that "[i]t was inconsistent with the concept of a country-wide rate for the ITA to disregard those companies receiving no benefit or a de minimis benefit when it determined the amount of the net subsidy and whether it was more than de minimis." *Id.* The Court of Appeals found no evidence that the Canadian government had subsidized the industry within the meaning of 19 U.S.C. § 1671(a) (1988), but only that it had attempted to aid a single firm.

> Where the overall level of subsidization provided to a particular industry by a foreign government is de minimis, no countervailing duty should be assessed. And, if there is a non-de minimis subsidy being provided, the countervailing duty should not exceed the weighted-average benefit received by all firms that produce or export the subject goods, including those firms that receive little or no subsidy.

*Ipsco*, 8 Fed. Cir. (T) at 86, 899 F.2d at 1197.

The government argues that *Ipsco* requires only that the country-wide rate, calculated by including companies receiving zero or de minimis subsidies, be greater than de minimis before a countervailing duty may be imposed. *Defendant's Memorandum*, at 69 *et seq.* Since the country-wide rate was greater than de minimis in this case, the countervailing duty imposed upon Ceramica is consistent with *Ipsco*. *Id*. According to this argument, the *Ipsco* decision simply does not concern the "all other" rate applied in this case and is therefore inapposite. *Id*. at 71.

The government's position is untenable unless the statement that "if there is a non-de minimis subsidy being provided, the countervailing duty should not exceed the weighted-average benefit received by all firms," is dictum. *Ipsco*, 8 Fed. Cir. (T) at 86, 899 F.2d at 1197. It is not.

Notwithstanding the statement that there was no evidence of a government subsidy to the industry, the *Ipsco* court remanded the case for "the ITA to calculate a weighted-average net subsidy by dividing the sum of all the benefits provided in subsidy of the subject goods by the total value of export sales of the goods to the United States. *If* this net subsidy is de minimis, the countervailing duty should be negative." *Ipsco*, 8 Fed. Cir. (T) at 87, 899 F.2d at 1197 (emphasis added)[2]. This remand instruction clearly allows for the possibility (however unlikely) that the country-wide rate, so calculated, would not be de minimis. In that event, the *Ipsco* Court's statement that the countervailing duty should not exceed the weighted average benefit received by all firms would have forbidden the application of the "all other" rate to *Ipsco*.

Although the government labors to distinguish the "all other" rate from the country-wide rate discussed in *Ipsco*, the administrative review makes no such distinction, and in fact refers to the rate for Ceramica and all other firms as a "country-wide rate." *Ceramic Tile From Mexico*, 53 Fed. Reg. at 15,090, 15,091. Like the country-wide rate

---

[2] *See also Ipsco, Inc. v. United States*, 12 CIT 359, 361, 687 F. Supp. 614, 617 (1988), wherein the Court stated, "At most [the inclusion of the de minimis companies] *could* trigger a technical threshold that, under certain circumstances, would allow the ITA to disregard the overall effect of the programs as insignificant." (emphasis added.)

in *Ipsco*, the "all other" rate applies to all imports of the ceramic tile in question except for those of companies with individual rates or specifically excluded from the order. *Id* at 15,090. Assuming, *arguendo*, that on remand in *Ipsco* the ITA had determined that the country-wide rate was not de minimis, the "all other" rate calculation would have been identical with the calculation that the *Ipsco* Court rejected.

Regulations cited by the government also support the position that the "all other" rate is simply another way of calculating the country-wide rate that "presumptively applies to all merchandise of such kind or class exported from the country investigated." 19 U.S.C. § 1671e(a)(2) (1988), *Ipsco*, 8 Fed. Cir. (T) at 86, 899 F.2d at 1197. The regulations were adopted shortly after the final results in this case were published. *Countervailing Duties*, Final Rule, 53 Fed. Reg. 52,306 (1988). The government asserts that the regulations incorporate prior administrative practice. *Defendant's Memorandum*, at 67. Although the method of calculating the "all other" rate is described in detail in the government's response to comments to 19 C.F.R. § 353.20(d), *Countervailing Duties*, Final Rule, 53 Fed. Reg. at 52,326, the regulations themselves make no reference to the "all other" rate or an equivalent calculation. *Id*. at 52,344 *et seq*. (19 C.F.R. § 355).

Under the regulations, the final results of an administrative review must state the net subsidy on a country-wide basis. 19 C.F.R. § 355.22(c)(7) (1989). Thereafter, assessment and deposit of countervailing duties is to be at the country-wide rate, unless individual rates are stated for those producers that received significantly different net subsidies, or for those producers who requested individual reviews. 19 C.F.R. § 355.22(c)(10), (d), (f); *Countervailing Duties,* Final Rule, 53 Fed. Reg. 52,306, 52,354–55. The "all other" rate cannot be fairly characterized as an individual rate; it must therefore be an alternative method of calculating the country-wide rate. Since the concept of a country-wide rate requires that companies receiving no benefit or de minimis benefit be included in the calculation of net subsidy, the "all other" conflicts with *Ipsco*. *Ipsco*, 8 Fed. Cir. (T) at 86, 899 F.2d at 1197.

The government argues that including companies with zero and de minimis rates in the calculation would result in a diluted rate far below the average rate of benefits received by the remaining companies. *Defendant's Memorandum*, at 73. This assertion cannot be reconciled with the determination that the rate of subsidy for these companies is not significantly different from the country-wide rate. The difference between the "all other" rate and the country-wide rate cannot be more than the smallest "significant differential" which was set by ITA practice in this case and is now established by regulation. 19 C.F.R. § 355.20(d)(3).

The ITA is authorized to establish differing countervailing duties if it determines that there is a significant differential between companies receiving subsidy benefits. 19 U.S.C. § 1671e(a)(2)(A); *Ipsco*, 8 Fed. Cir. (T) at 87, 899 F.2d at 1197. However, it is anomalous for the ITA to first

determine that there is no significant differential between the net subsidy rates for "all other" companies and the country-wide rate, and then assess countervailing duties at a rate different from the country-wide rate.

The Court concludes that the calculation of the "all other" rate in the administrative review was not in accordance with law.

### RETROACTIVE APPLICATION

The government argues that in any event, *Ipsco* should not be applied retroactively. In *James B. Beam Distilling Company v. Georgia*, 501 U.S. 529, 111 S.Ct. 2439, 2446, 115 L. Ed. 2d 481, 491(1991), the Supreme Court held that "it is error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so." Because the rule announced in *Ipsco* respecting non-de minimis country-wide rates was applicable to the parties therein on remand, *Beam* requires that it be applied to this case.

### CONCLUSION

Plaintiffs' count one is dismissed for failure to exhaust administrative remedies. The case is remanded to the ITA to recalculate the countervailing duty rate for Ceramica, Industrias Intercontinental, and all other firms without specified individual rates, based on a weighted average of all companies investigated, including those whose individual rates are de minimis or zero or otherwise significantly different from the resulting country-wide rate.